UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRENCE ANTHONY SLACK,
#174085,

                    Petitioner,

                                        CASE NO. 20-CV-10546
v.                                      HON. BERNARD A. FRIEDMAN

L. PARISH,

                    Respondent.
_____/

### OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.      Introduction**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Terrence Anthony Slack ("petitioner") was convicted of first-degree criminal sexual conduct ("CSC1"), MICH. COMP. LAWS § 750.520b, following a jury trial in the Wayne County Circuit Court.  He was sentenced, as a fourth habitual offender,  MICH. COMP. LAWS § 769.12, to 35 to 70 years imprisonment in 2017.  In his pleadings, the petitioner raises claims concerning the admission of other acts testimony, the admission of the victim's identification testimony, the conduct of the prosecutor, and the validity of his sentence.   For the following reasons, the Court denies the habeas petition.   The Court also denies a certificate of appealability as well as leave to proceed in forma pauperis on appeal.

**II.      Facts and Procedural History**

The petitioner's conviction arises from his rape of a 16-year-old girl in a Detroit alley in

1998. The Michigan Court of Appeals described the relevant facts, which are presumed correct

on federal habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir.

2009), as follows:

> Following a jury trial, defendant was convicted of sexually assaulting a 16-year-old female in an alley in Detroit on the night of January 4, 1998. During trial, the victim testified that she was travelling home after work when a man attempted to converse with her at a bus stop. The victim stated that she did not acknowledge him and that she did not believe he boarded the bus when it arrived. However, after riding and getting off the bus, the victim noticed that the same man who spoke to her at the bus stop was following her. The man quickly approached the victim from behind and jabbed something hard in her side. When the victim attempted to run away, the man grabbed her from behind, put his hand over her mouth, and forced her into an alley. The man then removed the victim's pants and raped her. Before fleeing, the man threatened to kill the victim if she moved. The victim reported the incident to the police and went to a hospital, where a sexual assault examination was performed and DNA samples were collected from a vaginal swab.

> In 2015, defendant was identified as a suspect of the sexual assault through the Combined Offender DNA Index System. Forensic testing revealed that defendant's DNA matched the DNA recovered from the victim in 1998, leading to defendant's arrest and prosecution. When interviewed in 2015, the victim was not able to identify defendant as the perpetrator from a photographic array, nor was she able to identify him during the preliminary examination. During trial, however, she testified that defendant "looks like an older version of the man I seen that night .... [w]ho assaulted me." Defendant was ultimately convicted of CSC I.

*People v. Slack*, No. 337135, 2018 WL 6184900, *1 (Mich. Ct. App. Nov. 27, 2018)

(unpublished).

Following his conviction and sentencing, the petitioner filed an appeal of right with the

Michigan Court of Appeals raising the following claims:

I.   The trial court erred by not allowing him to show that the prosecutor used MRE 404b evidence of a crime for which he was previously tried and acquitted.

II.  The trial court erred in allowing the victim to testify that he looked like an older version of the perpetrator even though she could not specifically

2

identify him.

III.   The prosecutor committed misconduct by arguing to the jury that the victim had "no reason to lie" about what occurred.

IV.   The court should remand for correction of his judgment of sentence as it erroneously imposes lifetime electronic monitoring which was not mandated at the time the crime was committed in 1998.

The Michigan Court of Appeals granted the petitioner relief on the sentencing claim, but denied relief on the other claims and affirmed his conviction.  *Id.* at *1-6.  The petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *People v. Slack*, 503 Mich. 1020, 925 N.W.2d 870 (2019).

The petitioner thereafter filed his federal habeas petition essentially raising the same claims presented to the state courts on direct appeal of his conviction.  The respondent filed an answer to the habeas petition asking that it be denied.

**III.   Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts employ when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination
>
>        of the facts in light of the evidence presented in the State court

3

proceeding.

28 U.S.C. §2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.   However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.   The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.   "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision." *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.; see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give

5

reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100.   Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are determined solely by Supreme Court precedent.   Thus, federal circuit or district court cases do not constitute clearly established Supreme Court law and cannot provide the basis for federal habeas relief.   *See Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam).   The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's decision.   *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review.   28 U.S.C. § 2254(e)(1).   A petitioner may rebut this presumption with clear and convincing evidence.   *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).   Habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Discussion

### A.    Procedural Default

As an initial matter, the respondent contends that some of the petitioner's habeas claims are barred by procedural default.   The court declines to address this defense.   Procedural default is not a jurisdictional bar to habeas review.   *See Howard v. Bouchard*, 405 F.3d 459,

6

476 (6th Cir. 2005).   Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits."   *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy:   "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.   Such is the case here.   The procedural issue is complex, somewhat intertwined with the merits of certain claims, and the substantive claims are more readily decided on the merits.   Accordingly, the court shall proceed to the merits of the claims.

> **B.     Merits**
>
> > **1.     Other Acts Evidence Claim**

The petitioner first asserts that he is entitled to habeas relief because the trial court erred by admitting MRE 404b (other acts) evidence, which consisted of testimony from a woman about the petitioner's sexual assault of her when she was a minor, without allowing him to present evidence that he was tried and acquitted of that crime.   The respondent contends that this claim is not cognizable and that any error was harmless.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.   *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the

Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

As to the admission of other acts evidence, the Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352–53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, the state court's decision is not "contrary to" any Supreme Court precedent addressing this issue. *Id*. at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). The petitioner thus arguably fails to state a claim upon which habeas relief may be granted.

Insofar as the petitioner asserts that the admission of the testimony was improper under state law and fundamentally unfair so as to violate his due process rights, he is not entitled to relief. The Michigan Court of Appeals considered this claim under state evidentiary law, determined that the trial court erred in admitting the evidence under Michigan Rule of Evidence 404(b) because the rapes were factually dissimilar, and ruled that the trial court abused its discretion by admitting the testimony without allowing the petitioner to rebut it with evidence that he had been tried and acquitted of the prior rape. *Slack*, 2019 WL 6184900 at *2-3. The court, however, also concluded that the error was harmless due to the DNA evidence linking the petitioner to the instant rape. The court explained in relevant part:

> However, in light of the DNA evidence presented by the prosecution against defendant at trial, we cannot conclude that reversal is warranted, as the evidentiary error was not outcome determinative. *Krueger*, 466 Mich. at 54. We

acknowledge that, "the mere presence of some corroborating evidence [of guilt] does not automatically render an error harmless," *People v. Denson*, 500 Mich. 385, 413; 902 N.W.2d 306 (2017). Regardless, in light of the DNA evidence linking defendant to the charged assault, we cannot conclude that the improper admission of the other-acts evidence undermined the reliability of the verdict by making it more probable than not that had this evidence not been admitted, the result of the proceedings would have been different. *People v. Lukity*, 460 Mich. 484, 495; 596 N.W.2d 607 (1999), citing MCL 769.26. The evidentiary error, therefore, was harmless.

*Id.* at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. On habeas review, an error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit). That test is more rigorous than the one applied on direct review. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (holding that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"). In addition, a state court's harmlessness decision is itself entitled to deference. *Davis v. Ayala*, 576 U.S. 257, 269 (2015). A habeas court may not grant relief unless the state court's "harmlessness determination itself was unreasonable." *Id.* (cleaned up). The application of that principle is satisfied by adhering to *Brecht* because where "the state court adjudicated [the petitioner's] claim on the merits, the *Brecht* test subsumes the limitations imposed by AEDPA." *Id.* at 270. In such cases, "a federal habeas court need not 'formal[ly]' apply both *Brecht* and

'AEDPA/*Chapman*.'"   *Id*. at 268.

Having reviewed the record, the Court agrees with the Michigan Court of Appeals that the DNA evidence linking the petitioner to the crime provided significant evidence of his guilt such that any error in admitting the other acts evidence was harmless and did not affect the outcome at trial.   More importantly, for purposes of federal habeas review, the Michigan Court of Appeals' decision to that effect was reasonable.   Habeas relief is not warranted on this claim.

### 2.   Victim's Testimony/Ineffective Assistance of Counsel Claims

The petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting the victim's testimony that the petitioner looked like an older version of the perpetrator because she was unable to identify him in a photo array and had not mentioned his resemblance in prior testimony.   The petitioner relatedly asserts that trial counsel was ineffective for failing to object to this testimony at trial.

As already discussed, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *Estelle*, 502 U.S. at 67–68; *Serra*, 4 F.3d at 1354.   "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo*, 365 F.3d at 494 (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne*, 606 F.3d at 871 (citing *Bey*, 500 F.3d at 519-20); *Bugh*, 329 F.3d at 512.

Due process protects a defendant against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures.  *Moore v. Illinois*, 434 U.S. 220, 227 (1977).   Due process thus requires the suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is

10

both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 241 n.6 (2012) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).  A pretrial identification procedure violates due process where:  (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson*, 432 U.S. at 99 (holding that due process challenges to identification procedures are reviewed using the *Biggers* test).  The harm occurs when an initial improper identification procedure unduly influences a subsequent investigation, resulting in a misidentification at trial.  *United States v. Wade*, 388 U.S. 218, 229 (1967).  A criminal defendant has the initial burden of proving that an identification procedure used by law enforcement during the investigation was impermissibly suggestive.  It is only after a defendant meets that burden that the court must require the state to prove that the identification was reliable, independent of the suggestive identification procedure.  *Id*. at 240 n. 31.  If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.  As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification.  *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

The Michigan Court of Appeals considered this claim on plain error review and denied relief.  The court explained in relevant part:

> "An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v. Williams*, 244 Mich. App. 533, 542; 624 N.W.2d 575 (2001). The fairness or suggestiveness of an identification procedure is evaluated in light of the totality of the circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification. *People v. Kurylczyk*, 443 Mich. 289, 302; 505 N.W.2d 528 (1993); *People v. Hornsby*,

11

251 Mich. App. 462, 466; 650 N.W.2d 700 (2002). If the trial court finds that the pretrial procedure was impermissibly suggestive, evidence concerning the identification is inadmissible at trial unless an independent basis for an in-court identification can be established "that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich. at 303. "The need to establish an independent basis for an in-court identification arises [only] where the pretrial identification is tainted by improper procedure or is unduly suggestive." *People v. Barclay*, 208 Mich. App. 670, 675; 528 N.W.2d 842 (1995) (citations omitted).

To the extent that there was an identification, the relief that defendant requests is appropriate only when an identification is the product of an unduly suggestive pretrial identification procedure. *Williams*, 244 Mich. App. at 542. In this case, there was no pretrial identification procedure. Rather, the victim's testimony at trial, to the extent it could be considered an identification, was based on her account of the offense and how she thought the perpetrator would look 18 years later. Although defendant argues that, there are reasons to question the reliability of the victim's identification, defendant was not prevented from exploring this issue at trial, and in fact, defense counsel did so. Through cross-examination, defense counsel established that the victim was unable to select defendant's photo from a photo array, and elicited that, at the preliminary examination, she did not indicate that he resembled an older version of the man who assaulted her. It was up to the jury to determine whether the victim's testimony was reliable and credible in light of the factors identified by defendant. *See People v. Davis*, 241 Mich. App. 697, 700; 617 N.W.2d 381 (2000). Furthermore, as aptly observed by plaintiff, the prosecutor did not rely on the victim's testimony about defendant resembling her attacker. The prosecutor instead argued that defendant's identification as the victim's assailant was established by the DNA evidence, and therefore, the victim's testimony "doesn't matter." For these reasons, we reject defendant's claim that the victim's testimony constituted plain error affecting his substantial rights.

*Slack*, 2019 WL 6184900 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.    *First*, to the extent that the petitioner asserts that the trial court erred under Michigan law, he merely alleges a violation of state law which does not justify federal habeas relief.  *See, e.g., Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief").   State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *Lewis v. Jeffers*, 497 U.S. 764, 780

12

(1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

*Second*, the petitioner fails to establish that the admission of the evidence rendered his trial fundamentally unfair. He does not explain with specificity which identification procedures were unduly suggestive and/or why they were unduly suggestive. For example, as to the photo array, he fails to describe the contents of the photo array, the appearance of the men depicted, and the circumstances surrounding the array. Conclusory allegations, without evidentiary support, are insufficient to justify habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).

Additionally, as to the preliminary examination, the Supreme Court has recognized that all in-court identifications involve "some element of suggestion." *Perry*, 565 U.S. at 244. The Supreme Court, however, has not found a witness's identification of a defendant at a preliminary examination to be a due process violation absent improper state conduct. As explained in *Perry*, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness." *Perry*, 565 U.S. at 232. When no improper law enforcement activity is involved, "it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence

13

of counsel at post-indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id*. at 233.   In this case, there was no improper law enforcement activity at the preliminary examination and the reliability tests outlined in *Perry* were followed during the proceedings.   To be sure, trial counsel thoroughly cross-examined the victim about her "identification" and her recollection of events.   The petitioner fails to show that the admission of the victim's identification testimony was improper or that it rendered his trial fundamentally unfair.

The petitioner relatedly asserts that trial counsel was ineffective for failing to object to the victim's identification testimony at trial.   The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.   First, a petitioner must prove that counsel's performance was deficient.   This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.   Second, a petitioner must establish that counsel's deficient performance prejudiced the defense.   Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.   *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."   *Id*. at 690.   The reviewing court's scrutiny of counsel's performance is highly deferential.   *Id*. at 689.   There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.   *Id.* at 690.   The petitioner bears the burden of overcoming

14

the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performances. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

In this case, the petitioner fails to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. *First*, counsel may have decided not to object to the victim's testimony because he was able to use her failure to identify the petitioner in the photo array, and her admission that she had not previously identified the petitioner as an older version of the perpetrator, to challenge her credibility and undermine the prosecution's case as a whole. Such strategy was reasonable. The fact that counsel's strategy was ultimately unsuccessful does not

15

mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). *Second*, given the Michigan Court of Appeals' decision and this Court's determination that the underlying claim lacks merit, the petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct. Trial counsel cannot be deemed ineffective for failing to make a futile or meritless argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010). Lastly, even if counsel erred in some fashion, the petitioner cannot establish that he was prejudiced by counsel's conduct given the DNA evidence linking him to the crime. Accordingly, the petitioner fails to show that trial counsel was ineffective.

### 3.    Prosecutorial Misconduct Claim

The petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by improperly vouching for the victim during closing arguments.

The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

The Michigan Court of Appeals considered this claim on plain error review and denied relief. The court explained in relevant part:

16

A prosecutor may not vouch for the credibility of a witness by conveying that she has some special knowledge that the witness is testifying truthfully. *People v. Knapp*, 244 Mich. App. 361, 382; 624 N.W.2d 227 (2001). However, prosecutors have great latitude when arguing at trial, *People v. Fyda*, 288 Mich. App. 446, 461; 793 N.W.2d 712 (2010), and may argue from the facts in evidence that a witness is worthy of belief. *People v. Cain*, 299 Mich. App. 27, 36; 829 N.W.2d 37 (2012), *vacated in part on other grounds* 495 Mich. 874 (2013).

The prosecutor did not suggest that she had some special knowledge that the victim was credible. The prosecutor's argument was that, objectively, the victim had no motive to fabricate a story to implicate defendant in a crime in 1998, and now 18 years later. The prosecutor urged the jury to evaluate the evidence, discussed the reliability of the victim's testimony, and argued that there were reasons from the evidence to conclude that she was credible. Further, defense counsel argued that the victim was not credible, and it was permissible for the prosecutor to argue that the victim had no motive to lie. *See Cain*, 299 Mich. App. at 37.

The record before us does not support defendant's contention that he never accused the victim of being untruthful. During defense counsel's cross-examination of the victim, defense counsel attempted to impeach her with prior inconsistent statements, and continued to do so during closing argument. For example, defense counsel argued: (1) there were no "witness statements... to verify that [the victim] actually was on the bus or not"; (2) no witness statements from the victim's grandmother or mother to corroborate the victim's demeanor that night and whether she had injuries; (3) no evidence to corroborate that the victim was "dragged, in the alley, fifteen feet," and, (4) "Well, allegedly, [the victim] was grabbed on the inside of her jaw, and made to keep quiet, with force. No injuries on the inside of her mouth." Defense counsel's cross-examination of the victim and closing argument clearly involved challenges to the credibility of her account of the offense. Contrary to what defendant asserts, the defense was not limited to only challenging the DNA evidence at trial. The prosecutor's arguments were responsive to the evidence and the defense theories presented at trial. Viewed in context, they were not improper.

Further, a timely objection to the challenged remarks could have cured any perceived prejudice by obtaining an appropriate cautionary instruction. *See Watson*, 245 Mich. App. at 586. Although defendant did not object, in its final instructions, the trial court instructed the jurors that they were the sole judges of witness credibility. This instruction protected defendant's substantial rights. *People v. Long*, 246 Mich. App. 582, 588; 633 N.W.2d 843 (2001). Juries are presumed to follow their instructions. *People v. Breidenbach*, 489 Mich. 1, 13; 798 N.W.2d 738 (2011). Consequently, this unpreserved claim does not warrant appellate relief.

*Slack*, 2019 WL 6184900 at *5-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   It is improper for a prosecutor to express his or her own personal opinions about the credibility of a witness.   *United States v. Young*, 470 U.S. 1, 9-10 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th   Cir. 2005).   Such statements are improper because (1) they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charges against the defendant, thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and (2) the prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the government's judgment rather than its own.   *Young*, 470 U.S. at 18-19; *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008); *see also Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010) (citing cases).   But here, the prosecutor did not express a personal belief that the victim was telling the truth nor imply special knowledge about her credibility or undisclosed evidence of guilt.   Rather, the prosecutor argued from the facts that her testimony should be credited.   A prosecutor may argue reasonable inferences from the evidence, *Bates v. Bell*, 402 F.3d 636, 646 (6th Cir. 2005), and may argue from the facts that a witness is or is not worthy of belief.   *Portuondo v. Agard*, 529 U.S. 61, 69 (2000).   The petitioner fails to show that the prosecutor's argument was improper or that it rendered his trial fundamentally unfair.

What is more, any potential prejudice to the petitioner was mitigated by the fact that the trial court properly instructed the jurors on the law, explained that the attorneys' arguments were not evidence, and directed them to evaluate the credibility of witnesses and to decide the case based solely on the evidence.   *See, e.g., Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir.

18

2003); *Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Jurors are presumed to follow the court's instructions. *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). For all these reasons, the petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.

### 4. Sentencing Claim

Lastly, the petitioner asserts that he is entitled to habeas relief because his judgment of sentence improperly stated that he was subject to lifetime electronic monitoring. The respondent contends that this claim is moot because the Michigan Court of Appeals granted relief on this claim. The Michigan Court of Appeals did, in fact, grant relief on this claim and remanded the case to the trial court for the ministerial task of correcting the judgment of sentence to vacate the requirement that the petitioner be subject to lifetime electronic monitoring. *Slack*, 2018 WL 6184900 at *6.

The Michigan Court of Appeals' decision requiring that the judgment of sentence be corrected to remove the lifetime electronic monitoring requirement renders this claim moot because the petitioner has already obtained the requested relief. There is no further relief this Court may grant on federal habeas review. *See Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009); *Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004) (when an event occurs which deprives a court of the ability to provide meaningful relief, the case becomes moot and is subject to dismissal); *accord Picron−Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (claim is moot when court no longer has power to grant requested relief); *Johnson v. Riveland*, 855 F.2d 1477, 1479-80 (10th Cir. 1998).

19

**V.      Conclusion**

In view of the foregoing, the Court concludes that the petitioner is not entitled to federal habeas relief on his claims.   Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before the petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).   A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court denies habeas relief on the merits of a claim, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.   *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

After considering the matter, the Court concludes that the petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims.   Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court finds that an appeal from this decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a).   Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED**.


Dated: May 9, 2022
        Detroit, Michigan

s/Bernard A. Friedman
Bernard A. Friedman
Senior United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on May 9, 2022.

**Terrence Anthony Slack**   #174085              <u>s/Johnetta M. Curry-Williams</u>
RICHARD A. HANDLON F.C.I.                 Case Manager
1728 BLUEWATER HIGHWAY
IONIA, MI 48846